UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Max Health, Inc., | Case No. 2:24-cv-00633-CDS-BNW |
| Plaintiff | **Order Granting in part Defendant's Motion to Dismiss Plaintiff's First Amended Complaint** |
| v. | |
| Rocky Mountain Hospital and Medical Services, Inc., d/b/a Anthem Blue Cross and Blue Shield, | [ECF No. 26] |
| Defendant | |

This case arises from a contract dispute between a medical provider and a health insurer. Plaintiff Max Health, Inc. sues Rocky Mountain Hospital and Medical Service, Inc., d/b/a Anthem Blue Cross and Blue Shield ("Anthem"), seeking damages for Anthem's failure to reimburse Max Health for the medical services it provided Anthem's insureds. Anthem previously moved to dismiss Max Health's complaint for failure to state a claim (ECF No. 7), which I granted. *See* Order, ECF No. 22. Anthem then filed an amended complaint, asserting claims for quantum meruit, breach of implied-in-fact contract, promissory estoppel, and equitable estoppel. Am. compl., ECF No. 25. Anthem moves to dismiss the amended complaint for failure to state a claim. Mot. dismiss, ECF No. 26. Max Health opposes the motion. Opp'n, ECF No 27. The motion is now fully brief. Reply, ECF No. 28. For the reasons set forth herein, I grant in part and deny in part Anthem's motion.

I.      **Background**[1]

Max Health is a chiropractic care provider in Nevada. Am. compl., ECF No. 25 at ¶ 8. Anthem provides health insurance to individuals and families, including Nevada residents, and offers medical claims review services for other health insurance providers. *Id.* at ¶¶ 9–10.

---

[1] Unless otherwise noted, any cites to the original complaint (ECF No. 1-1) or the amended complaint (ECF No. 25) are for context only and do not indicate a finding of fact.

In its original complaint, Max Health alleged that it entered into a contract with Anthem on February 5, 2015, whereby Anthem "agreed to pay" Max Health for the "approved medical services" it provided Anthem's insureds. Compl., ECF No. 1-1 at ¶ 7. It further alleged that Anthem failed to fulfill its contractual duty to "properly and promptly review and pay" Max Health's claims, despite Max Health making "every effort to comply" with the contract. *Id.* at ¶¶ 8–13. The original complaint asserted claims for breach of contract, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. *Id.* at ¶¶ 11–26.

Anthem moved to dismiss Max Health's complaint for failure to state a claim upon which relief can be granted. Mot. dismiss, ECF No. 7. I granted that motion and dismissed the complaint without prejudice and with leave to amend. Order, ECF No. 22. In turn, Max Health timely filed an amended complaint. ECF No. 25.

In its amended complaint, Max Health expands upon its original allegations and asserts entirely different claims. *See id.* It alleges that, for nearly a decade, Anthem reimbursed Max Health at the out of network rate for the medical services it provided Anthem's insureds. ECF No. 25 at ¶¶ 12–13. The parties' course of dealings allegedly gave rise to an implied-in-fact contract (rather than an express contract), which Anthem breached by failing and refusing to pay the reimbursements. *Id.* at ¶¶ 30–33. Max Health now seeks damages based on the following four claims: (1) quantum meruit, (2) breach of implied-in-fact contract, (3) equitable estoppel, and (4) promissory estoppel. *Id.* at ¶¶ 24–51.

Anthem moves to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, arguing that dismissal is warranted for three reasons. Mot. dismiss am. compl., ECF No. 26. First, Anthem argues that the quantum meruit claim fails because Max Health does not allege how it "conferred a benefit on Anthem, rather than its patients." *Id.* at 3. Second, Anthem argues that the implied-in-fact contract claim fails because Max Health does not "adequately allege the existence and terms" of the parties' purported

agreement. *Id.* Third, Anthem argues that estoppel claims fail because Max Health does not "adequately allege with specificity the elements of either claim." *Id.*

## II.    Legal standards

### A.  The standard for dismissal under Rule 12(b)(6) for failure to state a claim.

The Federal Rules of Civil Procedure requires the complaint to include "a short and plain statement of the claim" showing that the plaintiff "is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must give fair notice of a legally cognizable claim and the grounds on which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under this standard, neither legal conclusions couched as factual allegations nor a "formulaic recitation of a cause of action's elements will do." *Id.* Rather, the factual allegations must be sufficient to "raise a right to relief above the speculative level" when accepted as true. *Id.* at 556.

A complaint that fails to state a claim upon which relief can be granted may be dismissed under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court dismisses a complaint for failure to state a claim, then it should also allow leave to amend unless an amendment clearly cannot cure the complaint's deficiencies. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Rule 15(a) instructs the court to "freely" give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). Reasons to not grant leave to amend include the leave's "undue delay," the movant's "bad faith or dilatory motive," the previous amendments' "repeated failure to cure deficiencies," the opposing party's undue

prejudice "by virtue of allowance of the amendment," and the amendment's "futility." *Forman v. Davis*, 371 U.S. 178, 183 (1962).

### B. The standard for determining which state's law governs a contract dispute.

A federal district court sitting in diversity jurisdiction must apply the "forum state's choice of law rules to determine the controlling substantive law." *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). If the forum state is Nevada, then the court must apply Nevada's choice-of-law rules the way it believes the Supreme Court of Nevada would apply them. *Progressive Gulf Ins. Co. v. Faehnrich*, 627 F.3d 1137 (9th Cir. 2010). Nevada employs the "substantial relationship test" to resolve choice-of-law issues. *Williams v. United Services Auto. Ass'n*, 849 P.2d 265, 266 (Nev. 1993). Under that test, "the state whose law is applied must have a substantial relationship with the transaction," and "the transaction must not violate a strong public policy of Nevada." *Id.*

## III. Discussion

Anthem moves to dismiss Max Health's amended complaint for failure to state a claim upon which relief can be granted. The amended complaint asserts three claims: (1) quantum meruit, (2) breach of an implied-in-fact contract, and (3) equitable estoppel. I address these claims under Nevada law because Nevada has the closest connection to the contract dispute.[2]

### A. Max Health's amended complaint fails to state a claim for quantum meruit.

Anthem argues that the amended complaint's quantum meruit claim must be dismissed because it fails to allege that Max Health conferred a benefit on *Anthem*, rather than its patients. ECF No. 26 at 5. In response, Max Health argues that the terms "benefit" and "value" are broad but concedes that courts have not yet found that providing medical care to an insured confers a benefit on the insurer. *See* ECF No. 27 at 5–6.

---

[2] The parties do not dispute that Nevada law governs this action. Both parties relied on Nevada law in their pleadings, and there is no indication that a contractual conflict-of-law clause is at play. *See* ECF Nos. 25–28; *See Narayan v. EGL, Inc.*, 616 F.3d 895, 898 (9th Cir 2010); *Progressive Gulf Ins. Co.*, 327 P.3d at 1064.

A plaintiff may assert a quantum meruit claim to recover restitution in an unjust enrichment action or supply a term that is absent from an implied-in-fact contract. *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 256 (Nev. 2012). Here, the amended complaint asserts that, "[b]ased on quantum meruit," Max Health is "entitled to be reimbursed" by Anthem "at the out-of-network rate for the medical services it provided" to Anthem's insureds. ECF No. 25 at ¶ 27. This makes Max Health's quantum meruit claim more akin to a restitution award for unjust enrichment than a gap-filler term for an implied-in-fact contract. The parties do not merely dispute the contract's basis for calculating reimbursement claims or its schedule for invoicing those claims. Rather, the parties dispute whether a contract exists at all—creating a gap too large for a quantum meruit claim to fill. *See Certified Fire*, 283 P.3d at 256 (finding that there were "simply too many gaps to fill in the asserted contract for quantum meruit to take hold" where the parties disputed the contract's existence, price terms, and time of performance).

A restitution-type quantum meruit claim requires the plaintiff to show that "the defendant received a benefit from the services provided." *Id.* at 257. I find that Max Health has failed to do so here. Max Health alleges that it fulfilled its contractual obligations to Anthem, but it fails to also allege how that benefitted Anthem. While it alleges that it provided medical care to Anthem's insureds, the allegations fail to show how anyone other than the insureds benefitted from that care. And though its allegations as to its cooperation with Anthem during the reimbursement claims may have improved Anthem's efficiency, any benefit conferred by that cooperation was to Max Health itself and not Anthem. This is because the allegations show that Max Health had a financial interest in having the reimbursement claims processed and granted, but the allegations did not show such a benefit for Anthem. Consequently, Max Health's quantum merit claim fails and is hereby dismissed.

**B. Max Health sufficiently pleads its implied-in-fact contract claim.**

An implied-in-fact contract is a "tacit agreement of the parties" that is "manifested by conduct." *Certified Fire*, 283 P.3d at 379. "To find a contract implied-in-fact, the factfinder must

conclude that the parties intended to contract and promises were exchanged, the general obligations for which must be sufficiently clear." *Id.* at 379–80. "[T]hese determinations are factually intensive and ill-suited for a motion to dismiss or writ proceeding." *United Healthcare Ins. Co. v. Eighth Jud. Dist. Ct. in and for Cnty. of Clark*, 489 P.3d 915 (Nev. 2021) (affirming denial of a motion to dismiss where an insurance company allegedly breached an implied-in-fact contract with a medical provider by not reimbursing the provider for medical services rendered to the insurance company's insureds).

      "No implied-in-fact contract can exist without an intent to contract between parties and without sufficient information to supply necessary terms." *UnitedHealthCare Ins. Co. v. Fremont Emerg. Servs. (Mandavia), Ltd*, 570 P.3d 107 (Nev. 2025). In *Fremont*, the court overturned a jury's determination that an emergency medical provider had an implied-in-fact contract with a health insurance company to be reimbursed for medical services rendered to its insureds. *Id.* The court explained that the "evidence presented at trial" did not show "any meeting of the minds regarding specific obligations of the parties." *Id.* Although the health insurance company paid the medical provider after it became out of network, the court noted that such payments were "not made pursuant to an implied contract but rather independent legal obligations of each party" under the Emergency Medical Treatment and Active Labor Act. *Id.*

      Here, Max Health is a chiropractic care provider. Unlike the emergency services rendered in *Fremont*, Max Health had no legal obligation to render chiropractic services to Anthem's insureds. And unlike the parties in *Fremont*, the parties here never expressly agreed to exchange medical services to insureds for reimbursement payments. Thus, unlike the in-network to out-of-network change in *Fremont*, the lack of a formal agreement here does not necessarily indicate that there was no meeting of the minds. As such, applying the 12(b)(6) standard, I find that Max Health's implied-in-contract cause of action plausibly states a claim for relief. Anthem's motion to dismiss this claim is therefore denied.

### C. Max Health fails to sufficiently plead its estoppel claims.

To prevail on a promissory or equitable estoppel, Max Health must show four elements: (1) Anthem's appraisal of the true facts; (2) Anthem's intent for its conduct to induce reliance; (3) Max Health's ignorance of the truth; and (4) Max Health's detrimental reliance on Anthem's conduct. *See Las Vegas Convention & Visitors Auth. v. Miller*, 191 P.3d 1138, 1157 (Nev. 2008) (equitable estoppel); *Torres v. Nev. Direct Ins. Co.*, 353 P.3d 1203, 1209 (Nev. 2015) (promissory estoppel).

#### 1. *Equitable Estoppel*

Equitable estoppel "operates to prevent parties from asserting legal rights that, in equity and good conscience, the party should not be allowed to assert because of [its] conduct." *Chanos v. Nev. Tax Comm'n*, 181 P.3d 675, 679 (Nev. 2008) (citation modified). Here, Max Health's equitable estoppel claim is merely a formulaic recitation of equitable estoppel's elements. For example, Max Health merely states that it "relied to its detriment on the representations of [Anthem] in continuing to treat [Anthem's] insureds." ECF No. 25 at ¶ 38. But it does not say how that reliance was detrimental or why it cost Max Health over $75,000 in damages. Additionally, Max Health asserts that Anthem "in making these representations to [Max Health] intended that [Max Health] act upon those representations." *Id.* at ¶ 36. But it does not allege any facts in support of that assertion. Therefore, Max Health's equitable estoppel cause of action fails to state a claim upon which relief can be granted.

#### 2. *Promissory Estoppel*

"The promise giving rise to a cause of action for promissory estoppel must be clear and definite, unambiguous as to essential terms, and the promise must be made in a contractual sense." *Torres*, 353 P.3d at 1209 (quotation omitted). Here, Max Health merely recites the elements for estoppel without alleging facts in support of those allegations. For example, Max Health asserts that Anthem "asked for additional information regarding the medical claims and promised [Max Health] that the claims would be paid once the additional information was received." ECF No. 25 at ¶ 44. But that is the first and only time the complaint alleges that

Anthem promised to pay Max Health's claims. The complaint does not specify the timing, frequency, delivery, or terms of this promise. So the court cannot determine what relief is due based on that promise, even when construing all reasonable inferences in the light most favorable to Max Health.

**IV.    Conclusion**

IT IS HEREBY ORDERED that Anthem's motion to dismiss Max Health's amended complaint **[ECF No. 26] is GRANTED in part** and **DENIED in part.** It is granted for the quantum meruit claim, equitable estoppel claim, and promissory estoppel claim, but it is denied for the implied-in-fact contract claim.

The parties must submit an amended discovery plan and scheduling order by December 15, 2025. *See* ECF No. 30.

Dated: December 1, 2025

_____
Cristina D. Silva
United States District Judge